# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WOMEN'S RECOVERY CENTER, LLC, *et al.*,<br><br>        Plaintiffs,<br><br>    v.<br><br>ANTHEM BLUE CROSS LIFE AND HEALTH INSURANCE COMPANY, *et al.*,<br><br>        Defendants. | Lead Case No. 8:20-cv-00102-JWH-ADSx<br><br>Consolidated with Case Nos.<br>8:20-CV-00104-JWH (ADSx)<br>8:20-CV-00106-JWH (ADSx)<br>8:20-CV-00107-JWH (ADSx)<br>8:20-CV-00108-JWH (ADSx)<br>8:20-CV-00109-JWH (ADSx)<br>8:20-CV-00110-JWH (ADSx)<br>8:20-CV-00111-JWH (ADSx)<br>8:20-CV-00112-JWH (ADSx)<br>8:20-CV-00114-JWH (ADSx)<br>8:20-CV-00578-JWH (ADSx)<br><br>**ORDER GRANTING-IN-PART DEFENDANTS' OMNIBUS MOTION TO DISMISS THE SECOND CONSOLIDATED COMPLAINT [ECF No. 192]** |

Before the Court is the omnibus motion of Defendants to dismiss Plaintiffs' Amended Complaint.[1]  After considering the papers filed in support and in opposition,[2] as well as the argument of counsel at the hearing on the Motion, the Court orders that the Motion is **GRANTED-IN-PART** and **DENIED-IN-PART**, as set forth herein.

## I.  BACKGROUND

### A.    Procedural History

Plaintiffs filed their Complaint in California state court commencing this action in December 2019.  The next month, Defendants removed the action to this Court.  The Court consolidated the cases listed above in March 2020.[3]

Plaintiffs filed the operative Amended Complaint in August 2020.  Defendants filed the instant Motion a year later, in August 2021, and it is fully briefed.  The Court conducted a hearing on the Motion in November 2021.[4]

### B.    Factual History

Plaintiffs are a group of out-of-network substance use disorder treatment providers and clinical laboratories.[5]  Defendants are in the health insurance business.[6]  Plaintiffs assert claims in this action for (1) plan benefits under ERISA, 29 U.S.C. § 1132(a)(1)(B); (2) breach of written contract; (3) breach of implied covenant of good faith and fair dealing; (4) breach of implied contract;

---

[1]      Def.'s Omnibus Mot. to Dismiss (the "Motion") [ECF No. 192].

[2]      The Court considered the following papers:  (1) Second Am. Compl. (the "Amended Complaint") [ECF No. 49]; (2) the Motion (including its attachments); (3) Pls.' Opp'n to the Motion (the "Opposition") [ECF No. 199]; and (4) Def.'s Reply in Supp. of the Motion (the "Reply") [ECF No. 223].

[3]      *See* Minutes of Status Conference [ECF No. 15].

[4]      *See* Min. Order re Video Hr'g [ECF No. 230].

[5]      Amended Complaint ¶¶ 1-12 & 64.

[6]      *Id.* ¶¶ 13-63.

(5) breach of oral contract; (6) promissory estoppel; and (7) unfair competition. The facts as alleged in the Amended Complaint are set forth below.

Plaintiffs "provided medically necessary, verified, preauthorized and covered substance use disorder treatment and laboratory services to 1,792 individuals (the 'Insureds') with health insurance that was sold insured, managed and/or administered by Defendants."[7]  These treatments and services included detoxification, residential treatment, intensive outpatient treatment, counselling, medication management, and laboratory services.[8]

Defendants' health insurance plans, for each Insured, provide coverage for out-of-network substance disorder treatment and laboratory services.[9] Those plans pay benefits at varying percentages of covered charges until the Insured's nominal annual out-of-pocket maximum is met, at which time Defendants pay 100% of the charges.[10]  The plans also pay 100% of covered charges in cases where there is a "network inadequacy" or "network gap" for the relevant services.[11]

Plaintiffs are informed and believe that all Insureds had already met their annual out-of-pocket maximum at the time (or shortly thereafter) they first received treatment or services from plaintiffs.[12]  In addition, Plaintiffs are informed and believe that at all relevant times Defendants had an inadequate network of substance use disorder treatment providers and clinical laboratories for the Insureds.[13]

---

[7]     *Id.* at ¶ 64.
[8]     *Id.*
[9]     *Id.* at ¶ 65.
[10]    *Id.* at ¶ 66.
[11]    *Id.*
[12]    *Id.*
[13]    *Id.*

-3-

Each of the Insureds assigned to Plaintiffs—orally *and* in writing— benefits and payments by their insurance company or health plan.[14]  In reliance on the assignments of benefits, Plaintiffs provided treatment and services to the Insureds.[15]  Defendants confirmed, represented, promised, and warranted to Plaintiffs that each of the Insureds and their respective out-of-network treatments and services were covered by the relevant health insurance plan.[16]  Defendants knew at all relevant times that Plaintiffs were treating and providing services to their Insureds; Defendants were also aware of Plaintiffs' charges for the treatments and services.[17]

Despite those circumstances, Defendants paid Plaintiffs only an average of 18.55% of the covered charges for the Insureds.[18]  Moreover, Defendants refused to fully compensate Plaintiffs only *after* Plaintiffs rendered the treatments and services.[19]

During the claim-submission process, Defendants put Plaintiffs on various pre-payment review and program integrity audits, repeatedly requesting "the same documents and information from Plaintiffs, over and over again."[20]  Defendants subsequently refused to reimburse Plaintiffs for the covered treatments and services; Defendants likewise failed to provide Plaintiffs and the Insureds with adequate notice or explanations for the denial of benefits.[21]  Plaintiffs allege that these audits, inadequate notices, repetitive document requests, etc. "were false and fraudulent and were implemented by Defendants

---

[14]     *Id.* at ¶ 67.

[15]     *Id.* at ¶ 68.

[16]     *Id.*

[17]     *Id.*

[18]     *Id.* at ¶ 70.

[19]     *Id.*

[20]     *Id.* at ¶ 71.

[21]     *Id.*

. . . as a pretext to illegally delay and deny Plaintiffs . . . payment in accordance with Defendants' representations and promises."[22]

Plaintiffs allege that they have suffered general and incidental damages, including the benefits owed under the plans.[23]  Plaintiffs also seek injunctive relief and statutory and prejudgment interest and attorney's fees against Defendants.[24]

## II.  LEGAL STANDARD

### A.  Rule 12(b)(6)—Failure to State a Claim

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims asserted in a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  In ruling on a Rule 12(b)(6) motion, "[a]ll allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Am. Family Ass'n v. City & County of San Francisco*, 277 F.3d 1114, 1120 (9th Cir. 2002).  Although a complaint attacked by a Rule 12(b)(6) motion "does not need detailed factual allegations," a plaintiff must provide "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To state a plausible claim for relief, the complaint "must contain sufficient allegations of underlying facts" to support its legal conclusions. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . . ." *Twombly*, 550 U.S. at 555 (citations and footnote omitted).  Accordingly, to survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," which

---

[22]  *Id.*

[23]  *Id.* at ¶ 73.

[24]  *Id.*

means that a plaintiff must plead sufficient factual content to "allow[] the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint must contain "well-pleaded facts" from which the Court can "infer more than the mere possibility of misconduct." *Id.* at 679.

**B.    Rule 15(a)—Leave to Amend**

A district court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a). The purpose underlying the liberal amendment policy is to "facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000). Therefore, leave to amend should be granted unless the Court determines "that the pleading could not possibly be cured by the allegation of other facts." *Id.* (quoting *Doe v. United States*, 8 F.3d 494, 497 (9th Cir. 1995)).

## III.  DISCUSSION

**A.    Mass Pleading**

Defendants argue in their Motion that the Amended Complaint fails because it lacks "individualized allegations that independently meet the requirements of Rule 8."[25] Defendants contend that the Amended Complaint makes "the same blanket assertions regarding all claims against all Defendants."[26]

So-called "mass-pled" complaints sometimes aggravate existing problems in complaints. For example, in *Glendale Outpatient Surgery Ctr. v. United Healthcare Servs., Inc.*, 805 F. App'x 530 (9th Cir. 2020), the Ninth Circuit found that a mass-pled complaint failed to allege the existence of any ERISA plan and that the "lumping" together of 44 separate ERISA claims exacerbated

---

[25]    Motion 9:11-13.

[26]    *Id.* at 9:14-15.

this defect.  *Id.* at 531.  In addition, mass-pled complaints—like all complaints—must provide defendants with "fair notice of the claim and the grounds on which it rests."  *Brand Tarzana Surgical Inst., Inc. v. Blue Cross and Blue Shield of Illinois*, 833 F. App'x 714, 715 (9th Cir. 2021).  At the same time, when courts consolidate cases for the purposes of judicial economy—as happened here— "[r]equiring Plaintiffs to plead details from all [1,792 Insureds'] plans would undermine this goal and be deeply unfair to Plaintiffs."  *TML Recovery, LLC v. Cigna Corporation*, 2021 WL 3730168, at *4 (C.D. Cal. Jul. 26, 2021).

Defendants attack the Amended Complaint for "combin[ing] a dozen independent plaintiffs, allegedly assigned benefits from hundreds of different patients,"[27] seemingly ignoring the fact that the Court consolidated these cases—not Plaintiffs.  This is precisely the situation in which requiring Plaintiffs to plead individualized details would be "deeply unfair" and "undermine" the goal of consolidating these cases.  *Id.*  Accordingly, the Court does not fault Plaintiffs for the alleged problem of mass-pleading that Defendants raise.

**B.    ERISA Claims**

Defendants argue that the Court should dismiss Plaintiffs' claims for plan benefits under ERISA because Plaintiffs fail to allege adequately (1) standing to bring ERISA claims; (2) exhaustion of their administrative remedies; and (3) the existence and breach of the alleged ERISA plans.[28]

**1.    Standing to Pursue Claims for Plan Benefits Under ERISA**

A "valid assignment confers upon the assignee standing to sue in place of the assignor."  *Misic v. Building Service Employees Health and Welfare Trust*, 789 F.2d 1374, 1377 (9th Cir. 1986).  "[A]n assignee of beneficiaries pursuant to assignments valid under ERISA[] has standing to assert the claims of his

---

[27]    *Id.* at 11:13-14.

[28]    *Id.* at 12:21-23.

assignors." *Id.* at 1379; *see also In re WellPoint, Inc. Out-of-Network UCR Rates Litigation*, 903 F. Supp. 2d 880, 896 (C.D. Cal. 2012) (observing that it is "well-established . . . that providers who receive benefits assignments may sue directly under [29 U.S.C.] § 1132(a)(1)(B).")  To determine whether an assignment is valid under ERISA, "courts must look to the language of an ERISA assignment itself to determine the scope of the assigned claims." *Id.* (citing *Eden Surgical Ctr. v. B. Braun Med., Inc.*, 420 F. App'x 696, 697 (9th Cir. 2011).

Courts in this District appear split on the level of specificity required for a complaint to allege sufficiently a valid assignment under ERISA.  In *Creative Care, Inc. v. Connecticut Gen. Life Ins. Co.*, 2017 WL 5635015 (C.D. Cal. Jul. 5, 2017), the court dismissed a complaint similar to the one at bar because it "neither quoted from the purported assignment's language nor [did] it attach a copy of any agreement containing the alleged assignment that would allow the Court to determine the assignment's scope." *Id.* at *3.  In *In re Out-of-Network Substance Use Disorder Claims Against UnitedHealthCare*, 2020 WL 8457488 (C.D. Cal. Nov. 18, 2021), however, the court held "that requiring that the complaint include the text of the assignment contravenes Federal Rule of Civil Procedure 8. *Id.* at *4.  In *TML Recovery*, the court relied on *Creative Care* and noted that it previously dismissed without prejudice an amended complaint "because Plaintiffs 'neither quoted language from the alleged assignments nor attached copies of agreements containing the assignments,' meaning the Court could not determine whether the asserted claims were within the assignment's scope." *TML Recovery*, 2021 WL 3730168, at *3.  After plaintiffs in *TML Recovery* filed an amended complaint that included text from one of the patients' written assignment of benefits, however, the court found that the complaint sufficiently alleged standing under ERISA.  *Id.*

In a consolidated action such as this, plaintiffs must include at least one example—through quotation or attachment—of an assignment of benefits so

that the Court can determine whether it is valid. Because Plaintiffs have failed to do so in the Amended Complaint, the ERISA claims are **DISMISSED with leave to amend**.[29]

### 2.     Anti-Assignment Provisions and Exhaustion Requirements

Because the Court dismisses the ERISA claims, it need not address Defendants' arguments regarding anti-assignment provisions and administrative exhaustion. For the sake of judicial economy, however, the Court will provide a brief overview of the relevant law. The Court will not address other arguments made regarding the ERISA claims at this stage.

### a.     Anti-Assignment Provisions

"Anti-assignment clauses in ERISA plans are valid and enforceable." *Spinedex Physical Therapy USA Inc v. UnitedHealthcare of AZ, Inc.*, 770 F.3d 1282, 1296 (9th Cir. 2014). However, insurers cannot assert an anti-assignment provision as a defense for the first time in litigation. *California Spine and Neurosurgery Inst. v. Blue Cross of California*, 811 F. App'x 429, 429 (9th Cir. June 30, 2020). Moreover, a health care plan "administrator may not hold in reserve a known or reasonably knowable reason for denying a claim, and give that reason for the first time when the claimant challenges a benefits denial in court." *Spinedex*, 770 F.3d at 1296. It is therefore sufficient for a plaintiff to allege that Defendants never informed Plaintiffs of anti-assignment provisions until litigation commenced.

---

[29] Defendants Multiplan, Inc. and Viant, Inc. filed an Addendum to the Motion. *See* Defendants Multiplan, Inc.'s and Viant, Inc.'s Addendum to the Defs.' Omnibus Motion to Dismiss [ECF No. 194]. This Addendum is one of several addenda addressed in this Order. Because the addenda to the Motion are applications for the Court to order the dismissal of the Amended Complaint, the Court will treat the addenda as motions to dismiss. *See Dual Diagnosis Treatment Center, Inc. v. Blue Cross of California*, 2017 WL 11467730, at *11-*14 (C.D. Cal. Sept. 25, 2017) (treating addenda on a similar motion as motions to dismiss). Because the Court has dismissed the ERISA claims, and because all of Multiplan, Inc.'s and Viant, Inc.'s plans associated with this action are ERISA plans, this motion is **DENIED** as moot.

### b. Exhaustion

"As a general rule, an ERISA claimant must exhaust available administrative remedies before bringing a claim in federal court." *Spinedex*, 770 F.3d at 1298 (quoting *Barboza v. Cal. Ass'n of Prof'l Firefighters*, 651 F.3d 1073, 1076 (9th Cir. 2011)). If, however, "a plan claimant reasonably interprets the relevant statements in the summary plan description as permitting her to file a lawsuit without exhausting her administrative remedies, and as a result she fails to exhaust those remedies, she is not barred by the court-made exhaustion requirement from pursuing her claim in court." *Id.* at 1299 (quoting *Watts v. BellSouth Telecommunications, Inc.*, 316 F.3d 1203, 1209-10 (11th Cir. 2003)). "Even where a plan expressly requires exhaustion of administrative remedies, 29 C.F.R. § 2560.503–1(*l*) provides that where a plan fails 'to establish or follow claims procedures consistent with the requirements of this section,' claimants are 'deemed to have exhausted [their] administrative remedies.'" *Id.* (citing *Barboza* 651 F.3d at 1076).

At this stage, the Court notes that "[e]xhaustion is an affirmative defense" and that the "failure to exhaust is an appropriate basis for dismissing a complaint only when 'failure to exhaust is clear from the face of the complaint.'" *Smith v. Cigna Health & Life Ins. Co.*, 2020 WL 5834786, at *7 (D. Or. Sept. 30, 2020) (citing and quoting *Albino v. Baca*, 747 F.3d 1162, 1168-69 (9th Cir. 2014) (*en banc*)).

### C. Preemption of the State Law Claims

Defendants argue that Plaintiffs' state law claims for relief are preempted to the extent that they relate to ERISA plans.[30]

In the Ninth Circuit, "ERISA is doubly preemptive of related state law claims." *ABC Services Grp., Inc. v. Health Net of California, Inc.*, 2020 WL

---

[30] Motion 22:13-14.

2121372, at *4 (C.D. Cal. May 4, 2020) (on appeal).  "First, ERISA section 514(a) expressly preempts all state laws insofar as they may now or hereafter relate to any employee benefit plan, with an exception for insurance, banking, and securities laws."  *Id.* (internal quotations omitted) (citing *Cleghorn v. Blue Shield of Cal.*, 408 F.3d 1222, 1225 (9th Cir. 2005)).  "Second, ERISA section 502(a) contains a comprehensive scheme of civil remedies to enforce ERISA's provisions.  A state cause of action that would fall within the scope of this scheme of remedies is preempted as conflicting with the intended exclusivity of the ERISA remedial scheme."  *Id.* (internal citations omitted).

State law claims "relate to" an ERISA Plan if they have a "reference to" or an "impermissible connection with an ERISA plan."  *Id.* (internal quotations omitted) (citing *Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 665 (9th Cir. 2019)).  State law claims refer to ERISA plans if they are "premised on the existence of an ERISA plan" or if "the existence of the plan is essential to the claim's survival."  *Depot*, 915 F.3d at 665.

Here, as in *ABC Services Group*, "whenever Plaintiff has alleged the breach of an ERISA health insurance plan, its state law claims are premised on that same conduct, i.e., Defendants' allegedly wrongful denial of benefits.  Thus, in any of the consolidated cases involving a claim pursuant to an insurance plan governed by ERISA, the associated state law claims are preempted under ERISA's express preemption provision."  *ABC Services Group*, 2020 WL 2121372, at *4.  Plaintiffs cite no contrary Ninth Circuit case law.

All state law claims that depend on the existence of an ERISA plan are preempted.  Because amendment cannot rescue those claims, they are **DISMISSED with prejudice**.

## D.     FEP Claims

Defendants argue that claims involving the Federal Employee Program (the "FEP") must be dismissed.[31]  The FEP is governed by the Federal Employees Health Benefits Act (the "FEHBA").  5 U.S.C. §§ 8901-8914.  Compellingly, Defendants cite two cases from district courts within the Ninth Circuit that held that "sovereign immunity bars all claims brought by medical providers seeking payment from FEHBA administrators."[32]  *See Inspire Malibu v. Anthem Blue Cross Life & Health Ins. Co.*, 2016 WL 5746337, at *7 (C.D. Cal. Sept. 30, 2016) (dismissing claim because "[a]ny recovery against Anthem in this case would come from the funds in the federal treasury.  The United States cannot be sued without its consent, and the United States has not waived sovereign immunity in this case for a direct action by a provider."); *Vrijesh S. Tantuwaya MD, Inc. v. Anthem Blue Cross Life & Health Ins. Co.*, 169 F. Supp. 3d 1058, 1070–71 (S.D. Cal. 2016) (same).  Plaintiffs fail to address those cases, the reasoning in which the Court finds persuasive.  Accordingly, the Court **DISMISSES with prejudice** the FEP claims for lack of subject matter jurisdiction under Rule 12(b)(1).

## E.     Breach of Written Contract

Under California law, plaintiffs alleging the breach of a written contract must prove the following:  "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff."  *Oasis West Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).  In *TML Recovery*, the court denied a motion to dismiss a claim for relief for breach of written contract.  *TML Recovery*, 2021 WL 3730168, at *5.  The court noted that the amended complaint "quot[ed]

---

[31]     *Id.* at 25:19-20.

[32]     *Id.* at 25:25-26.

language from a contract" and specifically alleged that plaintiffs performed, defendants failed to pay, and plaintiffs suffered a loss.  *Id.*  In a previous order in that case, the court dismissed a claim for breach of a written contract because the operative complaint "lack[ed] specificity about the contracts involved and are thus insufficient to give Defendants notice of the claims against them."[33]

The parties dispute whether the complaint must quote from at least one contract.[34]  In *In re Out of Network Substance Use Disorder Claims against UnitedHealthcare*, 2020 WL 5913855 (C.D. Cal. Jul. 29, 2020), the court held that "the allegations regarding [plaintiffs'] status as assignees and the services provided are plausible [and] . . . Plaintiffs 'need not quote the exact contractual language or attach a copy of every relevant contract' to survive dismissal."  *Id.* at *6 (quoting *Casa Bella Recovery Int'l, Inc.*, 2017 WL 6030260, at *3 (C.D. Cal. Nov. 27, 2017).

In *Casa Bella*—quoted above—the court ***dismissed*** a claim for breach of written contract ***even though the plaintiff attached a copy of a sample assignment*** to the complaint.  *Casa Bella*, 2017 WL 6030260, at *3.  There, the court noted that "Plaintiff needs to allege more than conclusory statements . . . . And Plaintiff's factual allegations must be clear and complete enough to plausibly state a claim for relief."  *Id.* (internal citations and quotations omitted).  Accordingly, the court held that the plaintiff had not "alleged that the patients who received one type of treatment were covered for that type of treatment, or for what proportion of the treatment's cost.  Nor has Plaintiff alleged for what types of treatment or to what extent Defendants failed to meet their contractual obligations."  *Id.*; *see also TML Recovery*, 2018 WL 8806104, at *2 (dismissing a

---

[33]   Order Granting Defs.' Mot. to Dismiss in *TML Recovery*, Case No.8:20-00269-DOC-(JDEx) [ECF No. 75] at 7 (quoting *TML Recovery, LLC v. Humana Inc.*, 2018 WL 8806104, at *3 (C.D. Cal. Nov. 26, 2018).

[34]   *Compare* Motion 27:11-14 *with* Opposition 35:17-36:2.

claim for breach of contract for which the complaint failed to provide details such as "the states where the policies were issued, the patients' residences, the dates of service for any specific patients, the individual or even collective amounts billed, the reasons given for denial of claims, or many other key facts concerning the alleged contracts involved."); *TML Recovery*, 2021 WL 3730168, at *5 (holding that plaintiffs' amended complaint cures a previous defect "by quoting language from the contract").  Thus, while courts in the Central District of California do not ***require*** that complaints alleging breach of written contract for non-ERISA plans quote or attach the assignments, they do require specific "facts about the various agreements."  *Casa Bella*, 2017 WL 6030260, at *3.

Here, Plaintiffs point to eight paragraphs in the Amended Complaint that they purport allege breach of written contract with sufficient specificity.[35]  The Court disagrees.  Plaintiffs make generalized allegations, but they fail to separate the ERISA plans from the non-ERISA plans.  Plaintiffs must allege more facts than they do in their Amended Complaint.  Any amended pleading must refer to "specific contractual language or [] contractual provisions that [Defendants] allegedly breached."  *In re:  Out of Network Substance Use Disorder Claims*, 2020 WL 2114934, at *6 (C.D. Cal. Feb. 21, 2020).  Additionally, Plaintiffs should consider "quoting language from a contract," *TML Recovery*, 2021 WL 3730168, at *5, or attaching a contract to the amended complaint.  For now, the claim for breach of written contract is **DISMISSED with leave to amend**.

**F.      Breach of Implied Covenant of Good Faith and Fair Dealing**

Plaintiffs "allege that Defendants tortiously breached the plans and implied covenant of good faith and fair dealing, and identified no less than 10 instances of Defendants' bad faith conduct."[36]  In their Motion, Defendants cite

---

[35]      Opposition 36:15-23; Amended Complaint ¶¶ 244-251.

[36]      *Id.* at 39:26-28; *see also* Amended Complaint ¶ 266(a)-(j).

authorities supporting the argument that without a contractual obligation, "there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based on the contractual relationship." *Waller v. Truck Ins. Exch., Inc.*, 11 Cal. 4th 1, 36 (1995).[37]  Plaintiffs do not address these authorities.

Courts in this district, as well as many other districts, have found that a failure to address an argument in opposition briefing constitutes a concession of that argument. *See, e.g.*, *Johnson v. Macy*, 145 F. Supp. 3d 907, 918 (C.D. Cal. 2015) (citing *Tatum v. Schwartz*, 2007 WL 419463, at *3 (E.D. Cal. Feb. 5, 2007); *Day v. D.C. Dep't of Consumer & Regulatory Affairs*, 191 F. Supp. 2d 154, 159 (D.D.C. 2002) ("If a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded.")).

Here, the Court finds that, by failing to respond in a meaningful way to Defendants' argument that there can be no action for breach of the implied covenant of good faith and fair dealing because the covenant is based upon the contractual relationship, Plaintiffs have conceded the issue.

In addition, the Court finds that the allegations in the Amended Complaint are far too broad and conclusory to sufficiently state a claim. *See Redlands Country Club Inc. v. Cont'l Cas. Co.*, 2011 WL 13224843, at *4 (C.D. Cal. Jan. 28, 2011) (dismissing bad faith claim because "bare allegations" that the defendant "failed to investigate or engaged in other wrongful conduct" "fail[ed] to meet the pleading standards of *Twombly* and *Iqbal*").

Accordingly, the claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED with leave to amend**.

---

[37]     Motion 32:18-20.

-15-

### G. Breach of Implied Contract

In their Motion, Defendants cite several state and federal cases supporting the proposition that "[W]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay." *TML Recovery, LLC v. Humana Inc.*, 2019 WL 3208807, at *4 (C.D. Cal. Mar. 4, 2019) (quoting *Cedars Sinai Med. Ctr. v. Mid-West Nat'l Life Ins. Co.*, 118 F. Supp. 2d 1002, 1008 (C.D. Cal. 2000); *see also Pacific Bay Recovery, Inc. v. California Physicians' Services, Inc.*, 12 Cal. App. 5th 200, 215 & n.6 (2017) (holding that a sufficient complaint must include "more detailed allegations that [the defendant] authorized a certain amount of treatment or agreed to pay a specific rate," and that the plaintiff had failed to allege "a promise clear and unambiguous in its terms."); *Out of Network Substance Use Disorder Claims*, 2020 WL 2114934, at *8 ("Plaintiff's argument that an implied contract was created as to the patients and services at issue because United had previously authorized and verified benefits in the past is unavailing.") Plaintiffs fail to respond to these authorities and therefore effectively concede the point.

Plaintiffs acknowledge that their claim for breach of implied contract is "is based on Defendants' course of conduct with Plaintiffs, including numerous pre-authorizations, verifications of benefits, and certain payments for services rendered to Defendants' members."[38] Plaintiffs concede that actions such as verifying benefits are insufficient to constitute an implied contract, yet actions such as verifying benefits are the basis of Plaintiffs' claim. Accordingly, and because amendment would be futile, the claim for breach of implied contract is **DISMISSED with prejudice.**

---

[38] Opposition 40:22-24.

-16-

## H.    Breach of Oral Contract

The elements of a breach of oral contract claim are the same as those for a breach of written contract.  *Stockton Mortg., Inc. v. Tope*, 233 Cal. App. 4th 437, 453 (2014).  As discussed above, the elements of breach of written contract are: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach."  *Oasis West Realty*, 51 Cal. 4th at 821.  "An oral contract may be pleaded generally as to its effect, because it is rarely possible to allege the exact words."  *Khoury v. Maly's of California, Inc.*, 14 Cal. App. 4th 612, 616 (1993).

Here, Plaintiffs allege that:

> As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants . . . orally promised to pay Plaintiffs for the treatment and services provided to Defendants' insureds, all 1,792 of them, a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges).[39]

These allegations are very similar to the ones that the court in *Out of Network Substance Use Disorder Claims*, 2020 WL 2114934, at *8, held to be "plausible." Plaintiffs have alleged that there were oral agreements, that they performed, that Defendants failed to pay, and that Plaintiffs suffered a loss.[40]

Thus, it initially appears that Plaintiffs have sufficiently alleged a breach of oral contract.  But Defendants argue that Plaintiffs fail to allege valid consideration—which, if true, would mean that there was no enforceable contract.[41]  Defendants do not challenge that Plaintiffs allege that they suffered a

---

[39]    Amended Complaint ¶ 286.

[40]    *See id.* at ¶¶ 245 & 248-251.

[41]    Motion 40:12-19.

detriment.[42]  Instead, Defendants argue that the Amended Complaint alleges that what Plaintiffs purport to be consideration was really merely a preexisting duty under the alleged written contract.[43]  Defendants' argument is circular.  On one hand, they argue that Plaintiffs have not alleged the existence of an enforceable written contract.  On the other hand, they cite the written contracts' existence to support their argument that no oral contract existed.  Defendants cannot have it both ways.  So long as the claim for breach of written contract remains dismissed, the Court will not consider the existence of a preexisting duty stemming from the alleged written contract.  The motion to dismiss the claim for breach of oral contract is **DENIED without prejudice**.

I.      **Promissory Estoppel**

Under the doctrine of promissory estoppel, a "promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only be enforcement of the promise." *Kajima/Ray Wilson v. Los Angeles County Metro. Transp. Auth.*, 23 Cal. 4th 305, 310 (2000).  The elements of promissory estoppel are:  (1) a clear and unambiguous promise; (2) reliance by the party to whom the promise is made; (3) the reliance is both reasonable and foreseeable; and (4) the party asserting estoppel is injured by his reliance.  *U.S. Ecology Inc. v. State of California*, 129 Cal. App. 4th 887, 901 (2005).  As discussed above, "[w]ithin the medical insurance industry, an insurer's verification is not the same as a promise to pay."  *TML Recovery*, 2019 WL 3208807, at *4 (quoting *Cedars Sinai Med. Ctr.*, 118 F. Supp. 2d at 1008).  The Complaint must detail promises beyond mere verification.

---

[42]      *See id.*

[43]      *Id.*

-18-

In *TML Recovery*, the court found that Plaintiffs alleged a clear and unambiguous promise by averring that the "promises" were "not merely general representations of what the patients' policies would cover in verification calls but additional assurances that Defendants would pay." *Id.* at *6 (noting that the plaintiffs' amended complaint alleged that "Defendants, '[a]s part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims . . . expressed a clear promise to pay Plaintiff[s] on the same terms as provided for in the policies between Defendants and their insureds; specifically, payments to Plaintiff equal to a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%'")); *see also Out of Network Substance Use Disorder Claims*, 2020 WL 2114934, at *8 (complaint states a claim for promissory estoppel because it alleges that defendant "[a]s part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims . . . expressed a clear promise to pay Plaintiff on the same terms as provided for in the policies between Defendants and their insureds; specifically, payments to Plaintiff equal to approximately 70% of Plaintiff's fully-billed charges (based upon 30% co-insurance payable by the patients)").

Here, the Amended Complaint alleges promissory estoppel with a level of specificity similar to the complaints in the cases discussed above:

> As part of verifying benefits and authorizing treatment when necessary, and in multiple communications following admissions and the submission of claims, Defendants expressed a clear promise to pay Plaintiffs for the treatment and services provided to Defendants' insureds, all 1,792 of them, on the same terms as

-19-

provided for in the plans between Defendants and their insureds; specifically, payments to Plaintiffs equal to a percentage of their covered charges (between 50% to 80% of covered charges, with the majority of claims promised by Defendants to be paid at 70% of covered charges) until the insured's nominal annual out-of-pocket maximum is met at which time Defendants pay 100%.[44]

Defendants' motion to dismiss Plaintiffs' claim for promissory estoppel is **DENIED**.

## J.    Unfair Competition

California's Unfair Competition Law (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "The "unlawful" prong of the UCL treats violations of other federal, state, regulatory, or court-made law as unlawful business practices independently actionable under state law." *Out of Network Substance Use Disorder Claims Against UnitedHealthcare*, 2020 WL 5913855, at *7 (citing *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 319 F. Supp. 2d 1059, 1074 (C.D. Cal. 2003)). An unfair business practice under the UCL is "one that either offends an established public policy or is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *McDonald v. Coldwell Banker*, 543 F.3d 498, 506 (9th Cir. 2008).

Defendants argue that Plaintiffs lack standing to assert a claim under the UCL.[45] To support their argument, Defendants cite *Amalgamated Transit Union, Local 1756 v. Superior Court*, 46 Cal. 4th 993, 1002 (2009), in which the California Supreme Court held that ***uninjured*** assignees lack standing under the

---

[44]    Amended Complaint ¶ 293.
[45]    Motion 41:20.

-20-

UCL.  Here, Plaintiffs allege that they are *injured* assignees, and, therefore, they have standing.  *See Out of Network Substance Use Disorder Claims*, 2020 WL 214034, at *9 (conferring standing under the UCL to injured assignees in a similar case).

Defendants argue that Plaintiffs' UCL claim must fail because Plaintiffs have an adequate remedy at law.[46]  This argument lacks merit, because there is "no procedural bar to a federal court plaintiff pleading alternative remedies." *Wildin v. FCA US LLC*, 2018 WL 3032986, at *7 (S.D. Cal. Jun. 19, 2018).

Defendants also argue that Plaintiffs cannot recover damages under the UCL.[47]  Defendants cite several cases supporting their argument that damages "are not available for violations of the UCL.[48]  *See, e.g.*, *Bank of the W. v. Superior Court*, 2 Cal. 4th 1254, 1266 (1992) (holding that the only monetary relief available under the UCL is "the disgorgement of money that has been wrongfully obtained or, in the language of the statute, an order restor[ing] . . . money . . . which may have been acquired by means of . . . unfair competition" (citations omitted)); *Day v. AT&T Corp.*, 63 Cal. App. 4th 325, 340 (1998) (holding that restitution under the UCL requires that the offending party "obtained something to which it was not entitled and the victim must have given up something which he or she was entitled to keep."); *Watson Labs., Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F. Supp. 2d 1099, 1122 (C.D. Cal. 2001) ("There is a difference between 'getting' and 'getting back.'  The abstract property rights that Watson invokes do not entitle it to get something it never had.").

Plaintiffs cite no contrary cases in their Opposition.[49]  Instead, Plaintiffs argue that they are not seeking monetary damages, but are instead seeking:  (1) a

---

[46]    *Id.* at 42:8.
[47]    *Id.* at 43:5.
[48]    *Id.* at 43:6.
[49]    Opposition 48:10-20.

temporary restraining order, a preliminary injunction, and a permanent injunction, all enjoining Defendants . . . from unjustifiably withholding proper payment of claims"; and (2) "an order appointing a receiver over Defendants, and each of them, and restoring to Plaintiffs any money or property that was acquired through the foregoing acts of unfair competition." [50]  Plaintiffs cite no authority to suggest that the requested injunctive relief is not a dressed up version of monetary damages, which are not available under the UCL.  Similarly, Plaintiffs provide no substantive argument that the requested appointment of a receiver is not a way of "getting," as opposed to "getting back," when only the latter is permitted under the UCL.  *Watson Labs*, 178 F. Supp. 2d at 1122.

Because Plaintiffs do not seek damages that are recoverable under the UCL, the claim is **DISMISSED with leave to amend**.

## K.    CareFirst

Defendants CareFirst of Maryland, Inc. and CareFirst BlueChoice, Inc. (jointly, the "CareFirst Defendants") filed an addendum to the Motion.[51]  In the CareFirst Motion, the CareFirst Defendants argue that the state law claims against them should be dismissed because the Court lacks personal jurisdiction over them.[52]

In short, the CareFirst Defendants argue that (1) the Court has personal jurisdiction over them with respect to the ERISA Plans—since ERISA provides for nationwide service of process,[53] but (2) the Court does not have personal jurisdiction over them for the non-ERISA plans, since the CareFirst Defendants are not at home in California, nor have the CareFirst Defendants purposefully

---

[50]      *Id.* at 48:13-18; Amended Complaint ¶¶ 301 & 302.

[51]      *See* CareFirst's Addendum to Omnibus Mot. to Dismiss (the "CareFirst Motion") [ECF No. 195].

[52]      *Id.* at 2:9-10.

[53]      *Id.* at 2, n.1.

availed themselves of the California forum.[54]  In their Opposition, Plaintiffs challenge the CareFirst Defendants' purposeful availment argument.[55]  At a minimum, Plaintiffs argue, there is pendant jurisdiction over the CareFirst Defendants.[56]

Under Rule 12(b)(2), a defendant may move to dismiss for lack of personal jurisdiction.  The plaintiff then bears the burden of demonstrating that jurisdiction exists.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  For courts in California to exercise personal jurisdiction over the defendants, the defendants must have "certain minimum contacts with [California] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Int'l Shoe Co. v. State of Wash., Off. of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

To establish general jurisdiction, a defendant's contacts with the forum state must be "so 'continuous and systematic' as to render them essentially at home in the forum State."  *Daimler AG v. Bauman*, 571 U.S. 117, 138-139 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  Absent "exceptional" circumstances, a corporation is only "at home" in its "place of incorporation [or] principal place of business."  *Id.* at 139, n.19 (citing *Goodyear*, 564 U.S. at 924).  The CareFirst Defendants argue that the Court lacks general jurisdiction over them.[57]  The Court agrees, and Plaintiffs do not address the argument, thereby conceding the point.

---

[54]     *Id.* at 7:20-15:2.

[55]     Pls.' Opp'n to CareFirst's Addendum to the Motion (the "Opposition to CareFirst") [ECF No. 203] 2:1-6:15.

[56]     *Id.* at 1:10-11.

[57]     CareFirst Motion 7:20-9:3.

To establish whether specific jurisdiction exists, the Ninth Circuit employs a three-part test:

(1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

(2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

(3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.* it must be reasonable.

*Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Schwarzenegger*, 374 F.3d at 802). "The Plaintiff has the burden of proving the first two prongs." *Id.*

Here, Plaintiffs have not proved the first two prongs. Plaintiffs argue that "engaging in the business of insurance in California, the CareFirst Defendants are subject to local jurisdiction."[58] The CareFirst Defendants cite several cases supporting their argument that "an out-of-state health plan does not avail itself of the privilege of doing business in a particular state simply because the insured or member chose a medical provider in that particular forum."[59] *See, e.g.*, *Hunt v. Erie Ins. Group*, 728 F.2d 1244, 1245 (9th Cir. 1984) ("mere unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State."); *Aton Ctr., Inc. v. CareFirst Blue Cross BlueShield*, 2020 WL 4464482, at *7 (S.D. Cal. Aug. 3, 2020). Plaintiffs fail to respond to this argument, effectively conceding it.

---

[58]    Opposition to CareFirst 4:17-18.

[59]    CareFirst Motion 11:17-21.

-24-

Plaintiffs then argue that the CareFirst Defendants have minimum contacts through their alter ego—the BlueCross BlueShield Association ("BCBSA")—and their alleged co-conspirators.[60]  Plaintiffs must "make more than just 'conclusory allegations' to support personal jurisdiction under the alter ego theory."  *Sec. & Exch. Comm'n v. Jammin Java Corp.*, 2016 WL 6595133, at *10 (C.D. Cal. July 18, 2016) (quoting *Television Events & Mktg., Inc. v. Amcon Distrib. Co.*, 416 F. Supp. 2d 948, 962-63 (D. Haw. 2006)).  The same standard exists for conspiracy.  *See Pyle v. Hatley*, 239 F. Supp. 2d 970, 979 (C.D. Cal. 2002) (holding that the plaintiff's conspiracy allegations were conclusory and were thus insufficient to establish that the court can exercise personal jurisdiction over non-resident defendants).  Here, Plaintiffs' alter ego[61] and conspiracy[62] allegations are devoid of the facts necessary to rise above being conclusory or boilerplate.

Finally, Plaintiffs argue that the CareFirst Defendants have minimum contacts with California as licensees through their relationship with BCBSA.[63]  To support their argument, Plaintiffs cite *Xilinx, Inc. v. Papst Licensing GmbH & Co. KG*, 848 F.3d 1346, 1357 (Fed. Cir. 2017).  But that case is inapposite.  In *Xilinx*, the court noted that defendant Papst "has done more than just send letters to Xilinx.  Representatives from Papst traveled to California to meet with Xilinx in person" and "Papst has repeatedly availed itself of the California federal court system . . . by filing patent infringement lawsuits there."  *Id.*  Here, Plaintiffs do not make comparable allegations.

---

[60]    Opposition to CareFirst 5:5-5:24.

[61]    *See, e.g.*, Amended Complaint ¶¶ 61 & 62.

[62]    *See id.* at ¶ 63.

[63]    Opposition to CareFirst 5:25-26.

In the absence of personal jurisdiction, Plaintiffs request that the Court exercise pendent personal jurisdiction over the CareFirst Defendants.[64]  Under that doctrine, "a court may assert pendent personal jurisdiction over a defendant with respect to a claim for which there is no independent basis of personal jurisdiction so long as it arises out of a common nucleus of operative facts with a claim in the same suit over which the court does have personal jurisdiction."  *Action Embroidery Corp. v. Atlantic Embroidery, Inc.*, 368 F.3d 1174, 1182 (9th Cir. 2004).  But pendent personal jurisdiction is not appropriate in the absence of a federal claim providing for nationwide service of process to serve as an anchor claim.  *See In re JPMorgan Chase Derivative Litig.*, 2014 WL 5430487, at *16 (E.D. Cal. Oct. 24, 2014) ("[i]f [the] federal claim fails, it could no longer provide a basis for pendent jurisdiction).  Here, there is no federal claim that can serve as an anchor claim for the ***non-ERISA*** plans.

The Court does not have personal jurisdiction over the CareFirst Defendants with respect to non-ERISA plans.  Accordingly, the Court grants the CareFirst Defendants' Motion and **DISMISSES** for lack of jurisdiction the state law claims against them with respect to services rendered to the six patients whose plans were non-ERISA plans.[65]

**L.      Blue Cross and Blue Shield of Louisiana**

Defendant Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana ("BCBSLA") filed an Addendum to the Motion seeking the dismissal of Plaintiffs' claims against it for breach of contract and bad faith.[66]  BCBSLA's Motion is based upon the Court's consideration of

---

[64]      *Id.* at 1:10-27.

[65]      Those patients are identified in the CareFirst Motion as L.K, V.C., B.L., E.T., J.O., and K.P.  *See* CareFirst Motion 2:14.

[66]      *See* Def. Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana's Addendum to Omnibus Mot. to Dismiss (the "BCBSLA Motion") [ECF No. 196].

several exhibits not present in the Amended Complaint.  Plaintiffs object to the introduction of those exhibits.[67]  Although the BCBSLA Motion does not say so explicitly, BCBSLA rightly notes in its Reply that the BCBSLA Motion is ultimately a "motion to dismiss for lack of standing," which "is a challenge to the Court's subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)."[68]

A defendant may raise either a facial or factual challenge to Article III standing.  *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

When resolving a facial attack, the Court "presume[s] the truthfulness of the plaintiff's allegations" and determines whether the plaintiff has standing.  *Id.* at 1039.  In contrast, when resolving a factual attack, the court may "look beyond the complaint" and consider affidavits or other evidence properly before it without converting the motion to dismiss into one for summary judgment.  *Savage v. Glendale Union High Sch., Dist. No. 205, Maricopa County*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003); *Safe Air*, 373 F.3d at 1039.  In a factual attack, the court need not presume the truth of the allegations.  *Id.*  Here, Defendants mount a facial attack.

---

[67]    *See* Pls.' Objs. to Decl. of Ginger Bradley (the "Objections to BCBSLA") [ECF No. 205]; *see also* Decl. of Ginger Bradley in Supp. of Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana's Addendum to Omnibus Mot. to Dismiss (the "Bradley Declaration") [ECF No. 196-1].

[68]    Def. Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana's Reply to Pl.'s Opp'n. to Addendum to Omnibus Mot. to Dismiss (the "BCBSLA Reply") [ECF No. 218].

Plaintiffs object to each exhibit on the grounds that the exhibits are incomplete, not properly authenticated, and lacking foundation.[69]  *See* Fed. R. Evid. 901 & 602.  Plaintiffs move to strike Exhibits 1-4 to the Bradley Declaration, asserting identical objections to each.  Plaintiffs' objections are directed to the exhibits only, and not to any portion of the Bradley Declaration itself.  "[I]t is often unnecessary and impractical for a court to methodically scrutinize each objection and give a full analysis of each argument raised.  This is especially true when many of the objections are boilerplate recitations of evidentiary principles or blanket objections without analysis applied to specific items of evidence."  *Doe v. Starbucks, Inc.* 2009 WL 5183773, at *1 (C.D. Cal. Dec. 18, 2009).  Here, the "Court need not address boilerplate evidentiary objections that the parties themselves deem unworthy of development[.]" *Quimby-Johnson v. Bortree*, 2020 WL 1079875, at *4 (C.D. Cal. Feb. 10, 2020) (quoting *Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F. Supp. 2d 1080, 1081 (N.D. Cal. 2012)).  In accordance with those authorities, the Objections are **OVERRULED**.

BCBSLA filed the BCBSLA "to raise additional grounds for the dismissal of Plaintiffs' Second Claim for Relief for Breach of Contract and its Third Claim for Relief for Breach of the Implied Covenant of Good Faith and Fair Dealing."[70]  Above, the Court dismissed these claims with leave to amend. Here, the Court provides additional grounds for dismissal that are specific to four BCBSLA plans.

Under Louisiana law, which governs BCBSLA's non-ERISA plans, "[a]ll rights may be assigned, with the exception of those pertaining to obligations that are strictly personal."  LA. Civ. Code 2642.  "An obligation is strictly personal

---

[69]     Objections to BCBSLA at 1:10-3:25.

[70]     BCBSLA Motion 2:5-7.

when its performance can be enforced only by the oblige, or only against the obligor." LA. Civ. Code 1766. Moreover, a "right cannot be assigned when the contract from which it arises prohibits the assignment of that right. Such a prohibition has no effect against an assignee who has no knowledge of its existence." LA. Civ. Code 2653.

Plaintiffs' claims for relief against BCBSLA arise from services rendered to seven patients.[71] BCBSLA argues, and provides evidence to support, that four of those patients were enrolled in non-ERISA plans that were personal and unassignable.[72] BCBSLA similarly argues, and provides evidence to support, that those four plans have choice of law provisions mandating that the plans be construed in accordance with Louisiana law.[73]

When a moving party avers that a court lacks subject matter jurisdiction and presents affidavits and other evidence to support its argument, it "becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." *St. Clair v. City of Chico*, 88 F.2d 199, 201 (9th Cir. 1989). Here, Plaintiffs cite no Louisiana statute providing that contractual anti-assignment provisions may be waived. Plaintiffs do not provide any evidence to rebut BCBSLA's evidence regarding the anti-assignment and choice of law provisions of the plans. Plaintiffs have not produced any admissible evidence that they were ignorant of the anti-assignment provisions in the non-ERISA plans. Accordingly, Plaintiffs have not met their burden of establishing that this Court possesses subject matter jurisdiction. Accordingly, the BCBSLA Motion is **GRANTED**. As discussed above, the second and third claims are dismissed with respect to all Defendants. But any amended pleading

---

[71]   *Id.* at 3:4-5.

[72]   *Id.* at 3:4-5:27; *see also* Bradley Declaration and Exhibits.

[73]   *Id.* at 6:7-7:26; *see also* Bradley Declaration and Exhibits.

must establish that the Court possesses subject matter jurisdiction over the four non-ERISA BCBSLA plans.

## M.      Blue Cross and Blue Shield of North Carolina

Defendant Blue Cross and Blue Shield of North Carolina ("BCBSNC") filed an Addendum to the Motion seeking dismissal under Rule 12(b)(1).[74] BCBSNC maintains that two of the Insureds are covered by the State Health Plan, which is self-insured by the State of North Carolina.[75]  Plaintiffs object to BCBNC's introduction of evidence in support of that fact.[76]  BCBNC persuasively argues that claims against a North Carolina state agency (or BCBNC as an agent of the state) must be exhausted with the Office of Administrative Hearings.[77]  *See Jackson v. N.C. Dep't of Human Res. Div. of Mental Health, Devel. Disabilities & Substance Abuse Servs.*, 131 N.C. App. 179, 186 (1998) ("When the General Assembly provides an effective administrative remedy by statute, that remedy is exclusive and the party must pursue and exhaust it before resorting to the courts."); *Abrons Family Practice & Urgent Care, PA v. N.C. Dep't of Health & Human Servs.*, 370 N.C. 443, 447 (2018) ("A Plaintiff's failure to exhaust administrative remedies may result in the dismissal of the complaint for lack of subject-matter jurisdiction.").

Plaintiffs have not alleged exhaustion.  Instead of ruling on whether to admit evidence tending to show that two of the Insureds were covered by the State Health Plan, the Court will simply grant the motion with respect to any Insured who was covered by the State Health Plan.  Accordingly, the Court

---

[74]      *See* Def. Blue Cross and Blue Shield of North Carolina Addendum to Omnibus Mot. to Dismiss (the "BCBSNC Motion") [ECF No. 198].

[75]      *Id.* at 2:21-3:3; Decl. of Aimee Forehand [ECF No. 198-1] ¶¶ 4-6.

[76]      Pls.' Objs. to Decl. of Aimee Forehand [ECF No. 209].

[77]      BCBSNC Motion 2:13-15.

**DISMISSES with leave to amend** all claims related to enrollees in the North Carolina State Health Plan.

### N.    Blue Cross and Blue Shield of South Carolina

Defendant Blue Cross Blue Shield of South Carolina ("BCBSSC") filed an Addendum to the Motion.[78]  The BCBSSC Motion, along with the opposition[79] and objections[80] to it are very similar to the papers filed with respect to BCBSNC.

BCBSSC moves to dismiss the claims against it to the extent that those claims relate to services provided by the State Health Plan.[81]  BCBSSC persuasively argues that claims for benefits under the State Health Plan may be asserted only before the South Carolina Public Employee Benefit Authority and may be appealed only to the South Carolina Administrative Law Court.[82]  *See* S.C. Code Ann. § 1-11-710(C); *Allen v. South Carolina Budget and Control Bd. Employee Ins. Program*, 2010 WL 11579841, at *1 (S.C. Com. Pl. Oct. 12, 2010).

Plaintiffs fail to rebut this argument in any meaningful way.  Accordingly, the Court need not consider the exhibits nor the objections.  Instead, the Court **DISMISSES with prejudice** all claims against BCBSSC to the extent that those claims relate to services provided under the State Health Plan.

### IV.  CONCLUSION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1.       Plaintiffs' claims under ERISA are **DISMISSED with leave to amend**.

---

[78]    *See* Def. Blue Cross and Blue Shield of South Carolina's Addendum to the Omnibus Mot. to Dismiss (the "BCBSSC Motion") [ECF No. 197]

[79]    *See* Pls.' Opp'n to BCBS South Carolina's Addendum to Motion to Dismiss (the "Opposition to BCBSSC") [ECF No. 206].

[80]    *See* Pls. Objs. to Decl. of Brooks Goodman [ECF No. 207].

[81]    BCBSSC Motion 2:8-11.

[82]    *Id.* at 2:12-15.

2. All state law claims that depend on the existence of an ERISA plan are **DISMISSED with prejudice**.

3. All claims involving enrollees in the Federal Employee Program are **DISMISSED with prejudice**.

4. Plaintiffs' claim for breach of written contract is **DISMISSED with leave to amend**.

5. Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing is **DISMISSED with leave to amend**.

6. Plaintiffs' claim for breach of implied contract is **DISMISSED with prejudice**.

7. Defendants' motion to dismiss Plaintiffs' claim for breach of oral contract is **DENIED without prejudice**.

8. Defendants' motion to dismiss Plaintiffs' claim for promissory estoppel is **DENIED**.

9. Plaintiffs' claim under California's Unfair Competition Law is **DISMISSED with leave to amend**.

10. Plaintiffs' claims against the CareFirst Defendants are **DISMISSED** for lack of jurisdiction with respect to services rendered to the six patients whose plans were not ERISA plans.

11. The BCBSLA Motion is **DENIED**.

12. All claims related to enrollees in the North Carolina State Health Plan are **DISMISSED with leave to amend**.

13. All claims against BCBSSC relating to services provided under the South Carolina State Health Plan are **DISMISSED with prejudice**.

14. The deadline for Plaintiffs to file an amended pleading that cures the defects identified in this Order is February 18, 2022.

15. If Plaintiffs choose to file an amended pleading, then they are also **DIRECTED** to file contemporaneously therewith a Notice of Revisions to

Second Amended Complaint that provides the Court with a redline version that shows the amendments.

**IT IS SO ORDERED.**

Dated: February 2, 2022



John W. Holcomb
UNITED STATES DISTRICT JUDGE

-33-